IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| W. DEXTER HARRISON, | : | |
| | : | |
| Petitioner, | : | |
| | : | **1: 09-CV-90051 (HL)** |
| VS. | : | 28 U.S.C. § 2255 |
| | : | **1: 07-CR-45-003 (HL)** |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Respondent. | : | |
| | : | |

### RECOMMENDATION

Petitioner's Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255, filed on May 29, 2009, is before this Court for the issuance of a recommendation of disposition pursuant to Rule 8 of the Rules Governing Section 2255 Proceedings for the United States District Courts.  (Doc. 498).

### Background

Petitioner was indicted with two co-defendants in the Middle District of Georgia on October 20, 2005.  (Doc. 65-2).  The indictment charged Petitioner with one count of conspiracy to commit arson and mail fraud, one count of mail fraud, one count of arson, and one count of providing misleading statements.  Petitioner was represented by a retained attorney, Jerry Brimberry.  On March 8, 2006, a jury found Petitioner guilty as to all counts, Counts 5, 6, 7, and 13 of the Indictment.  (Doc. 223).  On August 2, 2006, Petitioner was sentenced to 180 months imprisonment, a $50,000.00 fine, and restitution in the amount of $466,668.29.  (Docs. 342, 507). Petitioner appealed his conviction and sentence to the United States Court of Appeals for the Eleventh Circuit, which affirmed the conviction.  (Doc. 450).  On May 29, 2009, Petitioner filed

this Motion to Vacate pursuant to 28 U.S.C. § 2255. (Doc. 498).

### Petitioner's § 2255 Claims

Petitioner alleges the following errors in his Motion to Vacate: (1) "[t]rial counsel rendered ineffective assistance of counsel by failing to properly investigate the facts of Petitioner's case and then by failing to present critical evidence, supporting Petitioner's defense and contradicting the prosecution's theory of the case"; (2) "[c]ontrary to its *Brady* and *Giglio* obligations, the prosecution failed to disclose evidence that Dennis Weaver sought to clandestinely record conversations with Julie Harrell (and presumably did) and that Harry James Mullen and his family were prime suspects in the arson." (Doc. 499).

After filing his Motion to Vacate, Petitioner attempted to amend his Petition to include a claim that his trial counsel was ineffective for failing to request a severance mid-trial after Petitioner's co-defendant waived his marital privilege. (Doc. 548). The Court denied Petitioner's Motion to Amend after determining that this claim was time-barred and did not relate back to the original Petition. (Doc. 563). Petitioner has now reasserted this claim in his post-hearing brief. (Doc. 601).

Petitioner's post-hearing brief also alleges that the Assistant United States Attorney (AUSA) failed to furnish a statement made by Martin Harrell, Petitioner's co-defendant, wherein Martin Harrell denied that Petitioner was involved in the arson. (Doc. 601).

Don Samuel, Petitioner's retained appellate counsel, represented Petitioner during the filing of the §2255 Motion, and represented Petitioner during the evidentiary hearing held on November 8, 2011. The government was represented by James Crane and Leah McEwen. Following the preparation of a transcript of the evidentiary hearing proceedings, both parties have filed briefs in

support of their positions. (Docs. 601, 605).

## Discussion

Section 2255 provides that:

> a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. If a prisoner's § 2255 claim is found to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id*.

*Time-Barred Claims*

Petitioner has attempted to assert two new claims in his post-hearing brief. Petitioner alleges that his trial counsel was ineffective for failing to move for a severance mid-trial, and the AUSA failed to disclose exculpatory statements. (Doc. 601).

The Court first notes that Petitioner has not obtained leave from the Court to amend his Petition. Petitioner has merely asserted these two additional claims in his post-hearing brief. In order to amend his Petition, Petitioner must have leave of the Court. *See* Fed. R. Civ. P. 15(a)(2). In an August 24, 2011 Order, the Court allowed Petitioner to file a motion to amend no later than September 16, 2011, if Petitioner wished to attempt to expand or narrow his claims. (Doc. 563). Petitioner's counsel, Don Samuel, filed a Motion for Extension to File a Motion to Amend, which the Court granted. (Doc. 573). While Petitioner's counsel did not file a motion to amend within

3

the time provided, Petitioner himself filed two additional Motions to Amend prior to the evidentiary hearing, which were both denied. (Docs. 576, 577, 579). As Petitioner has not obtained leave of Court to amend his Petition, the new claims referenced in his post-hearing brief cannot be added.

*Failure to Sever*

Petitioner alleges that he can properly add a claim that trial counsel was ineffective for failing to move for a severance mid-trial because his original Petition alleged a general claim of ineffective assistance of trial counsel. (Doc. 601).

A habeas petition must contain specific factual allegations to support each claim of ineffective assistance of counsel. *See* Rules Governing §2255 Proceedings Rule 2 (the petitioner must specify all grounds for relief and the facts supporting each ground); *Vick v. U.S.*, 730 F.2d 707, 708 (11th Cir. 1984) (a hearing is not required when a claim is based on unsupported generalizations). Herein, the Petition specifically alleged that Petitioner's trial counsel was ineffective for failing to properly investigate Petitioner's case. (Doc. 499). In his brief supporting the Petition, Petitioner alleged specific factual allegations that trial counsel failed to obtain the entire GBI file which contained information regarding Dennis Weaver and Harry James Mullen. (Doc. 499). There is no allegation or factual support for a claim of ineffective assistance of counsel based on a failure to move to sever mid-trial. Petitioner cannot attempt to add this claim more than two years after he filed his Petition simply by asserting that his original Petition contained an "overarching theory" of ineffective assistance of counsel. *See e.g. Higgins v. Addison*, 2010 WL 1329924, *12 (N.D. Okla. March 30, 2010) (denying ineffective assistance of counsel claim that did not identify specific instances of ineffective assistance of counsel or specific

4

facts to support the claim especially in light of the petitioner being represented by counsel).

The Court has already determined that Petitioner's claim of ineffective assistance of counsel regarding the severance claim is time-barred and does not relate back to the Petition.  (Doc. 563).  Petitioner asserted this new ground more than two years after the statute of limitations had run. (*See* Docs. 548, 601).   As Petitioner's original claim of ineffective assistance of counsel was based on a failure to investigate, the new ground does not relate back to the Petition.  *See Espinosa v. U.S.*, 330 Fed. Appx. 889, 892 (11th Cir. 2009) (newly raised claims of ineffective assistance of counsel relating to pre-trial conduct did not relate back to the original claims of ineffective assistance of counsel which were based on counsel's performance during specific moments of the trial and sentencing proceedings); *Davenport v. U.S.*, 217 F.3d 1341, 1346 (11th Cir. 2000) (holding the petitioner's newly asserted claims of ineffective assistance of counsel did not relate back to the original petition when the original petition did not mention the activity alleged in the new ineffective assistance of counsel claims).   Furthermore, Petitioner and his counsel were aware of this claim at the time of the filing of the original Petition, and yet they have failed to provide an explanation as to the failure to allege this claim until more than two years after the Petition was filed.   Petitioner has provided no new information that would persuade the Court to reconsider its August 24, 2011 Order denying Petitioner's Motion to Amend.

As Petitioner's claim that his counsel was ineffective for failing to move for a mid-trial severance is time-barred and does not relate back to the Petition, the undersigned recommends that this new claim be **DENIED**.

*Failure to disclose*

In his post-hearing brief, Petitioner also attempts to add a new claim alleging that the AUSA

5

failed to disclose exculpatory statements made by Petitioner's co-defendant, Martin Harrell ("Harrell"), during Harrell's debriefing interview that occurred post-trial, but prior to Petitioner's sentencing. (Doc. 601). Petitioner's counsel states that this claim is not time-barred because counsel was not made aware of the exculpatory statements until shortly before the §2255 evidentiary hearing.

Initially, the Court notes that it is not at all clear that Harrell made any statements that were exculpatory of Harrison. Petitioner alleges that Harrell acknowledged his own guilt in the arson, but denied that Petitioner was involved. (Doc. 601). Petitioner, however, has not provided any evidence as to what the statements were, or that any such statements were even made. Instead, Petitioner's brief indicates that his counsel had a conversation regarding Harrell's debriefing with an AUSA. In its Response, the government states that Harrell offered to "wrap . . . up with a bow" Petitioner's involvement in the arson, if Harrell was promised something particular in regard to his sentencing in the case. (Doc. 605, p. 31). As no agreement was made, Harrell did not provide any other statements regarding Petitioner. Additionally, at the §2255 evidentiary hearing, Brimberry, Petitioner's trial counsel, testified that he thought Harrell was turning State's evidence and did not know that Harrell "wanted to give exculpatory evidence for" Petitioner. (Doc. 596, Evidentiary Hearing, p. 27, ll. 23-25, p. 29, ll. 19-20). Brimberry also "did not believe [Harrell] to be a credible witness." (*Id.* at p. 39, ll. 18-19). Moreover, Harrell admitted to making false statements during his debriefing interview. (*See* Doc. 595, Harrell Evidentiary Hearing, p. 108, l. 21 – p. 109, l. 2). Thus, Petitioner has failed to provide any evidence that exculpatory statements were made during Harrell's debriefing interview.

Furthermore, Petitioner's claim is time-barred. Pursuant to 28 U.S.C. § 2255(f)(4), "[a]

1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of . . . the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." The limitation period begins to run when the facts "*could have been* discovered through the exercise of due diligence, not when they were *actually* discovered." *Aron v. U.S.*, 291 F.3d 708, 711 (11th Cir. 2002) (emphasis in original). "[T]he beginning of the one-year period is triggered by a date that is not necessarily related to a petitioner's actual efforts or actual discovery of the relevant facts." *Id.* Additionally, "[a]n application that merely alleges that the applicant did not actually know the facts underlying his or her claim does not pass [the due diligence] test." *In re Boshears*, 110 F.3d 1538, 1540 (11th Cir. 1997).

Simply because Petitioner's current counsel states that he did not know about possible exculpatory statements made by Harrell until sometime in 2011 does not mean that the information could not have been discovered prior to the filing of the Petition. Petitioner failed to show that he could not have ascertained the information that supports the underlying facts of this claim, and instead relies on a statement made by his §2255 counsel that counsel was not told about the exculpatory comment until sometime in 2011. *See e.g. In re Magwood*, 113 F.3d 1544, 1551-52 (11th Cir. 1997) (finding that an unsubstantiated assertion "failed to show that the factual predicate for [the] claim could not have been discovered previously through the exercise of due diligence").

Petitioner has not shown that, despite due diligence, he was unable to discover the facts underlying this claim, and extend the statute of limitations. Accordingly, the undersigned finds that Petitioner's claim that the AUSA failed to disclose exculpatory statements is time-barred, and

7

it is the recommendation of the undersigned that this second new claim be **DENIED**.

### *Procedurally Barred Claim*

In one of his original claims, Petitioner alleged that "the prosecution failed to disclose evidence that Dennis Weaver sought to clandestinely record conversations with Julie Harrell (and presumably did) and that Harry James Mullen and his family were prime suspects in the arson." (Doc. 499). Petitioner however did not raise this issue on direct appeal. *See U.S. v. Harrison*, 246 Fed.Appx. 640 (11th Cir. 2007).

Initially, the Court notes that it ordered an evidentiary hearing without providing the government an opportunity to respond to Petitioner's Motion to Vacate. The government's post-hearing brief was its first response to the original Petition, and at that time, the government raised the defense of procedural default. (Doc. 605). Regardless of whether the defense was preserved, "a federal court, in the exercise of its judicial discretion, may address procedural default despite the failure of the state to preserve or present the issue properly." *Yeatts v. Angelone*, 166 F.3d 255, 261-62 (4th Cir. 1999) (discussing case law in several circuits that hold courts are generally free to raise procedural default sua sponte); *see also Green v. U.S.*, 2006 WL 6496558, n.7 (S.D.Ga Sept. 23, 2009).

"Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." *Lynn v. U.S.*, 365 F.3d 1225, 1234 (11th Cir. 2004). Procedural default applies to all claims, including constitutional issues. *Id*. "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,'

or that he is 'actually innocent'[.]" *Bousley v. U.S.*, 523 U.S. 614, 622 (1998) (internal citations omitted); *see also Mills v. U.S.*, 36 F.3d 1052, 1055 (11th Cir. 1994).

To show cause, Petitioner must show that "some objective factor external to the defense impeded counsel's efforts" to raise the claim on direct appeal. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Cause may be shown if Petitioner demonstrates that the factual or legal basis of a claim was not reasonably available, or "that 'some interference by officials' . . . made compliance impracticable[.]" *Id.* The issue is whether the claim was available at the time of the direct appeal, not whether legal developments or new evidence was discovered which would make the claim stronger. *Lynn*, 365 F.3d at 1235.

Herein, Petitioner maintains that he did not get the information regarding the *Brady/Giglio* claim until he was filing the Petition, and thus, the claim is not procedurally barred. (Doc. 596, Evidentiary Hearing, pp. 6-7). It is unclear when Petitioner or his counsel became aware that Dennis Weaver ("Weaver") sought to audio record conversations he had with both Harrell and Julie Harrell (Harrell's wife), or when Petitioner or his counsel became aware that Harry James Mullen ("Mullen") was investigated in the arson. However, as it is clear that Petitioner and his counsel were aware of this information at trial, Petitioner has not shown that the claim was not reasonably available when he filed his direct appeal.

During the trial, evidence was presented through cross-examination that Weaver was in possession of audio recording devices so that he could record conversations with Harrell. (Doc. 424, Hearing Transcript, pp. 60-64). Weaver testified that he did not have an opportunity to record any conversations, and so there were no tapes. (*Id.* at p. 62). At the time of Weaver's cross-examination, if not prior to the trial, Petitioner and his counsel were aware that the GBI had

9

provided Weaver with equipment to record conversations with Harrell. Despite knowing there could have been tapes, Petitioner did not attempt to obtain the tapes during the trial or file an appeal regarding the allegations that the AUSA failed to disclose this information. Petitioner and his counsel could have easily indicated that they were not in possession of the alleged tape recordings at the time of the trial and, at that point, taken appropriate action.

Petitioner's trial counsel also admitted that he was aware that Mullen was a possible suspect in the arson. (Doc. 596, Evidentiary Hearing, p. 42). It appears that Petitioner informed the GBI that Mullen was a possible suspect, or at least involved, in the arson. (*Id.*). As it was Petitioner himself who helped supply the GBI with information regarding Mullen, Petitioner and his counsel should have certainly been aware that the GBI was considering whether Mullen was involved in the arson. Petitioner has failed to provide the Court with evidence which shows he was unable to discover this claim, or that the claim was not reasonably available, prior to the filing of the direct appeal.

If Petitioner, or Petitioner's appellate counsel, believed the AUSA did not provide all the documentary evidence required under *Brady*, Petitioner could have attempted to discover the information through post-trial motions, or other such actions. Furthermore, Petitioner has still not provided any information to show that Weaver recorded any conversations, or that any such tapes exist. Petitioner has also failed to show that the AUSA withheld documents regarding Mullen that should have been produced to Petitioner pursuant to *Brady* and *Giglio*.

Petitioner has not shown that "some objective factor external to the defense impeded counsel's efforts" to raise the claim on direct appeal. *See Murray*, 477 U.S. at 488. Additionally, Petitioner has failed to show that the factual or legal basis for this claim was not

10

available at the time of the filing of the direct appeal. In fact, it appears Petitioner's counsel may have been aware of the underlying claim following Petitioner's conviction, as he filed an Open Records Act request to obtain the GBI file. (Doc. 596, Evidentiary Hearing, p. 7). Petitioner denies any procedural default because he did not obtain the entire GBI file until after the direct appeal had concluded. However, the question is whether "the claim was available at all", not whether "subsequent legal developments have made counsel's task easier[.]" *Smith v. Murray*, 477 U.S. 527, 537 (1986); s*ee also Lynn*, 365 F.3d at 1235. The *Brady/Giglio* claim appears to have been available at the time of the direct appeal, and there is no evidence that Petitioner, or his trial or appellate counsel, could not have obtained the information prior to the filing of the direct appeal. Accordingly, Petitioner has not shown "cause" for his failure to raise the claim on direct appeal.

Petitioner has also not shown actual prejudice. "Actual prejudice must result in a substantial disadvantage at trial." *Starks v. U.S.*, 2009 WL 161196, 5 (M.D. Fla. Jan. 21, 2009). At the time of the trial, Petitioner's counsel was aware that Dennis Weaver had sought to record conversations, and that Mullen was possibly involved in the arson. Petitioner, therefore, has not shown that he was substantially disadvantaged at the trial since he was aware of the underlying evidence that he alleges he did not receive.

The new evidence that Petitioner's counsel received before filing the §2255 Petition may arguably bolster Petitioner's claim, but it did not lead to the discovery of a new claim. As Petitioner failed to raise the *Brady/Giglio* claim on direct appeal and has not shown cause and actual prejudice, it is the recommendation of the undersigned that Petitioner's claim alleging that "the prosecution failed to disclose evidence that Dennis Weaver sought to clandestinely record

11

conversations with Julie Harrell (and presumably did) and that Harry James Mullen and his family were prime suspects in the arson" be **DENIED** because it is procedurally barred.

*Ineffective Assistance of Counsel*

Petitioner's last remaining claim is that Brimberry, Petitioner's trial counsel, was ineffective for failing to properly investigate the facts of Petitioner's case, and present critical evidence, supporting Petitioner's defense and contradicting the prosecution's theory of the case. (Doc. 499). To prevail on a claim of ineffective assistance of counsel, a movant bears the burden of establishing by a preponderance of the evidence that (1) his attorney's performance was deficient and that (2) he was prejudiced by the inadequate performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Chandler v. United States*, 218 F.3d 1305, 1312 (11th Cir. 2000).

To establish deficient performance, a defendant must prove that his counsel's performance was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. *Chandler*, 218 F.3d at 1313. There is a strong presumption in place that the challenged action constituted sound trial strategy. *Chateloin v. Singletary*, 89 F.3d 749, 752 (11th Cir. 1996). As such, a court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). In order to show that counsel's performance was unreasonable, a petitioner must show that no competent counsel would have taken the action in question. *Hall v. Thomas*, 611 F.3d 1259, 1290 (11th Cir. 2010).

To satisfy the prejudice prong, a petitioner must show that there is a reasonable probability that, but for counsel's inadequate representation, the proceedings would have produced a different result. *Weeks v. Moore*, 216 F.3d 951, 960 (11th Cir. 2000); *Mills v. Singletary*, 63 F.3d 999,

1020 (11th Cir. 1995). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

If a defendant fails to establish that he suffered prejudice as a consequence of the alleged ineffective assistance, a court need not address the performance prong of the *Strickland* test. *Holiday v. Halley*, 209 F.3d 1243 (11th Cir. 2000). The *Strickland* court stated that "[a] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

Petitioner asserts that his trial counsel was ineffective for failing to investigate and demand the contents of the entire GBI file, specifically any GBI documents that involved tapes made by Dennis Weaver of conversations between himself and Julie Harrell, and information about Harry James Mullen. (Doc. 601).

A lawyer is required to make an effort to investigate the obvious. *House v. Balkcom*, 725 F.2d 608, 618 (11th Cir. 1984). "When a lawyer fails to conduct a substantial investigation into any of his client's plausible lines of defense, the lawyer has failed to render effective assistance of counsel." *Id.* at 617-18. "Counsel has a duty to interview potential witnesses and make an independent examination of the facts, circumstances, pleadings and laws involved." *Rummel v. Estelle*, 590 F.2d 103, 104 (5th Cir. 1979) (internal quotations omitted).

There is a wide degree of latitude provided to trial counsel if he decides not to investigate claims or issues based on trial strategy. *Ward v. Hall*, 592 F.3d 1144, 1164 (11th Cir. 2010). Strategy is the "trial counsel's course of conduct, that was neither directly prohibited by law nor

13

directly required by law, for obtaining a favorable result for his client." *Id.* (quoting *Chandler v. U.S.*, 218 F.3d 1305, 1314 n. 14 (11th Cir. 2000)). An attorney's strategy can include determining what witnesses to call, how to cross-examine, and what lines of defenses he will present at trial. *Id.*

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. . . . [A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. When determining the reasonableness of counsel's actions and decisions, it is important to assess the information supplied by the defendant because the reasonableness can depend on the defendant's own actions. *Id.* If Petitioner can prove that his trial counsel's representation fell below the reasonableness standard, he must still show he was prejudiced by counsel's actions. *Goodwin v. Balkcom*, 684 F.2d 794, 805 (11th Cir. 1982).

*Weaver's taped conversations*

Petitioner maintains that his trial counsel was ineffective for failing to properly investigate the information contained in the GBI file that related to Weaver's taped conversations between himself and Julie Harrell. The Court initially notes that there has been no evidence that any alleged tapes exist. It appears to be undisputed that the GBI provided Weaver with equipment so that he could record any conversations he had with Harrell and/or Julie Harrell. (Docs. 588-1, 601, 605). However, there is no evidence that any recordings were made.

At trial, Weaver testified to the following regarding the alleged recordings:

> [Attorney Meeks]:   I want to know what those tapes said.

14

> [Weaver]: There's nothing on those tapes.
> [Attorney Meeks]: Who did you give the tapes to?
> [Weaver]: There was no tape to give.  There was nothing on the tape.

(Doc. 424, Trial Transcript, p. 62, ll. 21-25).   Further, at the evidentiary hearing, three law enforcement agents testified regarding the alleged audio recording.   The following are excerpts from the agents' testimonies:

> [Testimony of Agent Brad Donnelly:]
> [AUSA McEwen:] Are you familiar with any attempts by Dennis Weaver to tape Julie Harrell?
> [Donnelly:]   Vaguely, I knew that that was set into motion.
> . . .
> [AUSA McEwen:] And to your knowledge were any such tapes received?
> [Donnelly:] No, they were not.   (Doc. 596, Evidentiary Hearing, p. 72, ll. 20-25).
>
> . . .
>
> [Testimony of Agent Mike Walsingham:]
> [AUSA Crane:] And in your review [of the GBI file] did you find any evidence, suggestion, that Dennis Weaver had, in fact, tape recorded on any form, digital, reel-to-reel, what have you, cassette, either Marty Harrell or Julie Harrell?
> [Walsingham:] No, sir, I did not.   (*Id.* at p. 80, ll. 14-18).
>
> . . .
>
> [Testimony of Agent Mike Murphy:]
> [AUSA Crane:] Do you know of any tapes that Dennis Weaver made of Marty Harrell or Julie Harrell of any sort?
> [Murphy:] I'm not aware of any, no, sir.

(*Id.* pp. 85-86, ll. 25-2).

The evidence also shows that Petitioner's trial counsel filed a Motion for Discovery Materials, including a Brady Motion.   (Doc. 120).   At trial, counsel, including counsel for the

15

co-defendants, had ample evidence regarding the tape recordings to effectively question Weaver regarding any alleged recordings. (*See* Doc. 424, Trial Transcript, pp. 60-64). Weaver denied that any recordings were made, which is consistent with the testimony of the agents and consistent with the undersigned's review of the GBI file exhibits cited by Petitioner. (*Id.*). As there is no evidence that the alleged tapes exist, Petitioner has failed to prove trial counsel was ineffective for failing to obtain the alleged tapes. *See e.g. Powell v. Allen*, 602 F.3d 1263, 1271 (11th Cir. 2010) (finding the petitioner's claim had no merit when the petitioner could point to no record evidence which showed the "true results" of allegedly falsified evidence); *Reed v. McNeil*, 2008 WL 4456745, *36 (M.D. Fla. Sept. 29, 2008) ("This Court cannot conclude that there is any deficient performance on the part of trial counsel for failing to obtain evidence which did not exist."); *Harbour v. McDonough*, 2007 WL 1120386, *12 (N.D. Fla. April, 13, 2007) (finding that "counsel cannot be deemed deficient for failing to seek production of non-existent evidence").

Regardless of trial counsel's alleged failure to obtain the entire GBI file, Petitioner has failed to show he was prejudiced by trial counsel's failure to investigate. Petitioner alleges that the failure to obtain the tapes allowed Weaver to fabricate the content of his conversations with Julie Harrell during his trial testimony. However, as there is no evidence that any conversations were taped, Petitioner is merely speculating that the alleged tapes contained evidence that Weaver lied while testifying during Petitioner's trial. Any allegations that the outcome of the trial would have been different if trial counsel would have demanded the nonexistent tapes are speculative at best. Petitioner has failed to show that, even if trial counsel had demanded the entire GBI file be produced to Petitioner, there exists a reasonable probability that the outcome of the trial would have been any different.

As Petitioner has failed to show the existence of the evidence that his trial counsel allegedly failed to obtain, and failed to show that he was prejudiced by the failure to obtain the alleged tapes, it is the recommendation of the undersigned that Petitioner's claim that his trial counsel failed to properly investigate tape recordings between Weaver and Julie Harrell and present that evidence at trial be **DENIED**.

*Obtaining GBI file regarding Harry James Mullen*

Petitioner also appears to allege that his trial counsel failed to properly investigate other possible suspects in the arson. (Doc. 499). Specifically, Petitioner maintains that his trial counsel erred by failing to obtain the entire GBI file, which contained evidence that Harry James Mullen ("Mullen") was a suspect in the arson. Petitioner does not cite to any evidence regarding this claim, nor does he specifically argue this claim in his post-hearing brief. (*See* Doc. 601).

At the evidentiary hearing, Petitioner's trial counsel, Brimberry, testified that he investigated Mullen and determined he was not a viable suspect in the arson. (Doc. 596, Evidentiary Hearing, pp. 42, l. 2 – 43, l. 5). Brimberry testified to the following:

> Q. Did you do an investigation into the background or the possible involvement of Harry James Mullen in the arson?
> [Brimberry:] Yes. (Doc. 596, Evidentiary Hearing, p. 31, ll. 11-14).
>
> . . .
>
> Q. Do you recall how you first learned that someone suspected that Mr. Mullens might have some part to play in this offense?
> [Brimberry:] Well, my recollection is I possibly either learned it from Mr. Harrison and/or the motel staff. . . . I think [Mr. Mullen and his family] were staying at the motel for a period of time, and [Mr. Mullen and his family] became a possible suspect, at least in our mind.
> Q. And are you aware and were you aware at the time that your client, Mr. Harrison, had provided that information to the GBI early

17

> in their investigation in January of 2002, that he, Mr. Harrison, suspected that perhaps Mr. Mullens had been involved?
> [Brimberry:] Well, I think Dexter - - my understanding - - was trying to help the GBI – I know he was trying to help me by . . . giv[ing] us the names of anybody that would have access, and that's how Mr. Mullen's name came up.
>
> . . .
>
> Q. And other than receiving the information from your client that you attempted to follow up on in whatever way that you did, did you develop an opinion as to whether there was any evidence to suggest that Mr. Mullen had any motive, opportunity, or involvement in this offense?
> [Brimberry:] No. We did not conclude that he was a viable suspect as a result of our investigation.

(*Id.* at pp. 42, l. 2 – 43, l. 5).

Furthermore, as stated above, Brimberry filed a Motion for Discovery Materials, including a Brady Motion. (Doc. 120). There is no evidence to show that counsel received inadequate documents through his discovery requests. Petitioner appears to rely on a statement made by Brimberry at the evidentiary hearing, wherein Brimberry testified that he did not know if there were any portions of the GBI file that related to Mullen that were not given to him. (Doc. 596, Evidentiary Hearing, p. 31, ll. 15-19). Petitioner represented that he cannot reconstruct the discovery materials that were furnished to the defense, and thus there is no evidence that Brimberry did not receive all the proper discovery documents. (Doc. 601).

Petitioner has also failed to show that there exists a reasonable probability that the outcome of the trial would have been any different had Brimberry obtained the entire GBI file. Petitioner asked that the entire GBI file be entered into evidence, yet fails to direct the Court to any specific evidence that Brimberry did not receive, but should have attempted to acquire. There is no

indication that Petitioner was prejudiced by Brimberry's failure to obtain information regarding Mullen beyond the documents produced during discovery and the information received during Brimberry's investigation.   As such, there is no reasonable probability that the outcome of the trial would have been any different had Brimberry demanded the unknown documents that he allegedly did not receive regarding Mullen.

Petitioner has failed to show that his trial counsel's failure to obtain additional discovery documents regarding Harry James Mullen and present that evidence at trial was unreasonable or prejudiced Petitioner.   Therefore, it is the recommendation of the undersigned that this claim be **DENIED**.

### Conclusion

Petitioner has failed to show that his attorney's performance was deficient, or that Petitioner was prejudiced by his attorney's performance, such that there was a reasonable probability that but for counsel's errors, Petitioner would not have been found guilty.   Furthermore, Petitioner failed to timely raise his claims that trial counsel was ineffective for failing to move for a severance mid-trial, and that the government failed to disclose exculpatory statements.   The Court also finds that Petitioner's *Brady/Giglio* claim is procedurally barred. Thus, it is the recommendation of the undersigned that Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to the recommendations contained herein with the Honorable Hugh Lawson, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this Recommendation.

The undersigned finds no substantial showing of the denial of a constitutional right.   28

U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).   Therefore, it is recommended that the Court deny a certificate of appealability in its Final Order.   If the Petitioner files an objection to this Recommendation, he may include therein any arguments he wishes to make regarding a certificate of appealability.

**SO RECOMMENDED**, this 19th day of April, 2012.

s/ *THOMAS Q. LANGSTAFF*
UNITED STATES MAGISTRATE JUDGE